IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

No. 3:19-cv-338

Damon Burns,
*Plaintiff*,

v.

City of Santa Fe, et al.,
*Defendants*.

## MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, United States District Judge.

In this section-1983 suit, Damon Burns sues Sergeant James Weiland and Officer Brian Tandy for violating his Fourth Amendment right to be free from unreasonable searches and seizures. Burns specifically alleges that Weiland and Tandy lacked probable cause to arrest him and execute search warrants to seize certain firearms. Weiland and Tandy have moved for summary judgment (Dkt. 57). After reviewing the record, the applicable law, and the parties' arguments, the court grants the motion.

1

I.  **Background**

Plaintiff Damon Burns's confrontation with the Santa Fe Police Department (SFPD) began with a phone call.[1] Burns, "who claimed to be a heavily armed member of a militia,"[2] had contacted SFPD to discuss "preparations for the protection of [] Santa Fe citizens from harassment at polling locations during the early voting period of the November 2018 general election."[3] Burns was specifically concerned about whether his and others' voting rights would be protected should "a deranged gunman" return to Santa Fe High School.[4]

Sergeant Weiland, who answered the phone call, began reviewing Burns's criminal history.[5] He discovered that Burns's lengthy criminal record included multiple arrests for driving while intoxicated, a conviction for family violence, and a charge for possession of a controlled substance.[6] As Weiland admits, however, he "did not realize that Burns's final sentence [for the possession charge] was deferred

---

[1] Dkt. 63-1 at 3. This was not Burns's first encounter with SFPD. "From time to time, Sante Fe police officers had interacted with Damon Burns prior to the occurrences which form the basis of this lawsuit." Dkt. 57 at 11.

[2] Dkt. 57 at 11.

[3] Dkt. 63-1 at 3.

[4] *Id.*

[5] Dkt. 57-2 at 2–3.

[6] *See id.* at 3; *see also* Dkt. 57-1.

until after Burns served a probationary period" and that his "final conviction was reduced to a misdemeanor based on a plea bargain agreement."[7]

Even so, when Burns asserted that he was "well-armed" and "ha[d] a gun," Weiland warned him "that he was a convicted felon" and would be arrested if he were seen possessing a firearm.[8] This irked Burns, who suspected Weiland had failed to perform "even the most cursory of checks" on his criminal history.[9] Burns retorted that he "had a Second Amendment right to possess a firearm" and that he was coming to the police station "to clear up . . . the misconception that [he] was a convicted felon and could not legally possess a firearm."[10] Weiland again warned him that "if he brought a weapon to the police station, Burns would be arrested."[11]

About an hour later, Sergeant Weiland observed Burns "driving his riding lawnmower on the FM 1764 highway and across a field to get to the police department parking lot."[12] Weiland also observed a pistol holder on Burns's hip with "a wooden handle protrud[ing] from inside the holster."[13] Acting on his observation

---

[7] Dkt. 57-2 at 3.
[8] Dkt. 63-1 at 3.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] Dkt. 57 at 13 (citing Dkt. 57-2 at 4).
[13] *Id.*

3

of "apparent criminal conduct," Weiland quickly detained Burns and discovered that the handle protruding from Burns's holster was a knife.[14] And then he called Officer Brian Tandy for assistance.[15]

Once detained, Burns admitted to Weiland and Tandy that he had recently kept two firearms at his residence, but had since sold both to Easy Cash and Jewelry in Santa Fe.[16] Hearing this, Weiland arrested Burns, and Tandy contacted James Haugh, the on-call prosecutor, to discuss what charges they might file.[17]

The parties do not dispute that Haugh then authorized charging Burns with unlawful possession of a firearm. But they disagree about how Haugh reached that recommendation. According to Weiland and Tandy, Haugh had "independently review[ed] Burns's criminal history while speaking to Officer Tandy over the phone."[18] On the other hand, Burns insists that Tandy made an "intentional or reckless misrepresentation [to Haugh] regarding [Burns's] criminal history," and Haugh "had no independent knowledge of" Burns's record.[19]

---

[14] *Id.* (citing Dkt. 57-2 at 4).

[15] *Id.*

[16] Dkt. 63-1 at 4.

[17] *See id.*; *see also* Dkt. 57-3 at 3.

[18] Dkt. 57 at 14 (citing Dkt. 57-3 at 3).

[19] Dkt. 63-1 at 4.

4

In any event, after Haugh authorized the firearm-possession charge, Tandy requested and obtained a warrant to search for the guns Burns admitted having owned.[20] Pursuant to the warrant, Tandy seized a 12-gauge shotgun at Easy Cash and Jewelry that Burns had pawned about thirty days earlier.[21]

With Burns in jail, Tandy next applied for another search warrant, this time for Burns's residence.[22] Before applying, however, Tandy called an ATF agent and confirmed that Burns could not possess firearms with a family-violence conviction.[23] Nevertheless, Burns maintains that Tandy "again intentionally or recklessly misrepresent[ed] that [Burns] was a convicted felon and that he [] had firearms at his residence."[24]

Based on this allegedly "fraudulent warrant application," Tandy and Weiland searched Burns's residence and "recovered several items related to prior firearm ownership[,] including 403 rounds of .22 caliber ammunition, 123 rounds of 12-gauge shotgun ammunition, and gun cases."[25]

---

[20] Dkt. 57-2 at 5.
[21] *Id.* at 6.
[22] Dkt. 63-1 at 6.
[23] Dkt. 57-3 at 3–4.
[24] Dkt. 63 at 10 (citing 63-1).
[25] *Id.* at 10–11 (citing exhibits 1 & 4).

As Tandy and Weiland were searching his residence, Burns's stint in the Santa Fe jail was not going well. After he was booked and placed into a cell, Burns "began complaining of chest pains and excessive sweating."[26] Burns attributes those symptoms "at least in part due" to his "being physically disabled from a serious motorcycle accident and having been placed in an unairconditioned squad car with the windows rolled up . . . ."[27]

Santa Fe EMS was summoned and transported Burns to the hospital, but only after administering sedatives for his pain and fractiousness.[28] Though the hospital suggested admitting him for observation, Burns refused, and so was returned to jail.[29]

Back in jail, Burns's situation did not improve. Weiland and Tandy soon learned he "was once again in physical distress."[30] Burns told Weiland that "his illegal detention and subsequent illegal arrest had caused him to suffer some type of panic attack."[31] So he was returned to the hospital.[32] This time, Burns was admitted

---

[26] Dkt. 63 (citing Dkt. 63-1).

[27] *Id.* at 8 (citing Dkt. 63-1).

[28] *Id.*

[29] Dkt. 63-1 at 6.

[30] *Id.* at 5.

[31] *Id.* at 8.

[32] *Id.*

and stayed overnight for observation.[33] He complains that this "medical intervention was not only traumatic to [his] emotional state, but cost him money in medical bills[] as well."[34]

"The next morning," Burns says, Weiland "sent Tandy to [the hospital] to guard [Burns and] await his discharge" so he could return him to jail."[35] "Once [Tandy] arrived," Burns alleges, he "physically assaulted [Burns] over the use of his hospital room telephone and forcibly removed him from the hospital without a proper medical discharge."[36] Following this alleged assault, Tandy drove Burns to the Galveston County jail "and released him into its custody."[37]

The two charges for which Burns was first arrested—driving (a lawnmower) with an invalid license and unlawful possession of a firearm—were ultimately dismissed. Once it was clear Burns had no felony conviction, the Galveston County District Attorney declined to present the weapons charge to a grand jury.[38] The

---

[33] *Id.*

[34] Dkt. 63 at 12 (citing Dkt. 63-1 at 113–14).

[35] *Id.* (citing Dkt. 63-1).

[36] *Id.*

[37] Dkt. 63-1 at 7.

[38] Dkt. 63 at 13 (citing Dkt. 63-1 at 6). Burns admits, however, that he was previously convicted of family violence. Dkt. 57-6 at 3.

charge for driving with an invalid license was dismissed after it was referred to a justice of the peace.[39]

Aggrieved by these events, Burns sued Weiland, Tandy, and the City of Santa Fe for violating his constitutional rights. The court has already dismissed Burns's *Monnell* claim against the city.[40] Weiland and Tandy now move for summary judgment on the remaining Fourth Amendment claims.[41] Because Burns has abandoned his claims of malicious prosecution and excessive force,[42] the court will address only his claims of unlawful arrest and unlawful seizure.[43]

## II. Analysis

### A. Unlawful Arrest

The parties dispute whether Weiland and Tandy had probable cause to arrest Burns. The standard for probable cause is familiar: "Probable cause exists where the facts and circumstances within the officer's knowledge at the time of the arrest are

---

[39] Dkt. 63-1 at 8.

[40] Dkt. 50.

[41] Dkt. 40 at 12–13.

[42] *See* Dkt. 50 at 7, n. 37.

[43] *See* Dkt. 63 at 1 (stating that he is suing Weiland and Tandy for "violating his Fourth Amendment rights to be free from unreasonable search or seizure by unlawfully arresting him and by unlawfully seizing his private property"). As explained above, Burns makes many allegations related to his medical care. He clarifies in his sur-reply, however, that he offers these facts only to prove the fourth element of his unlawful-arrest claim, "not as an independent claim under the Fourteenth Amendment." Dkt. 66 at 7.

sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[44] "The probable cause issue must be analyzed under the 'totality of the circumstances' as to whether there is a 'fair probability' that a crime is occurring."[45]

In arguing that his arrest was unlawful, Burns makes two points. First, he was not a felon at the time of his arrest.[46] And second, he believes Weiland and Tandy's misreading of his criminal history was "intentional or reckless."[47] Neither Weiland nor Tandy dispute the first point. But as for the second point, Weiland and Tandy correctly observe that Burns's "intentional or reckless" assertion is not supported by personal knowledge.[48] Nothing in Burns's affidavit or briefing gives the court "sufficient information" to conclude that his "assertions are indeed based on such

---

[44] *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (internal quotations omitted).

[45] *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 323 (1983)).

[46] Dkt. 63-1 at 3.

[47] *See, e.g.*, Dkt. 63 at 23 ("[P]laintiff has shown that there is a genuine dispute as to whether defendants' admitted misreading of plaintiff's criminal history was intentional or reckless . . . ."); *id.* at 23–24 ("[P]laintiff alleges that probable cause did not exist for his arrest for [unlawful possession of a firearm] because defendants Tandy and Weiland knew or with reckless disregard for the truth would have known that he was not a convicted felon.").

[48] *See* Dkt. 65 at 1–3.

knowledge."[49] There are only conclusory allegations transferred from his complaint to his affidavit.[50]

Nor, for that matter, has Burns shown that either Weiland or Tandy should be denied qualified immunity. As he acknowledges, "officers may be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so[,] provided that the mistake is objectively reasonable."[51] Weiland and Tandy admit they unintentionally misread Burns's criminal history. But Burns offers no facts to show how this mistake amounts to objective unreasonableness, particularly in light of his family-violence conviction.[52]

Burns's unlawful-arrest claim is dismissed.

## B. Unlawful Search

Burns accuses Weiland and Tandy of making deliberately false statements to obtain the two search warrants they executed.

---

[49] *Meadaa v. K.A.P. Enters, L.L.C*, 756 F.3d 875, 881 (5th Cir. 2014).

[50] *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (stating that the object of Rule 56 "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

[51] Dkt. 63 at 28, n. 3 (citing *Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017)).

[52] *See* 18 U.S.C § 922(g)(9) (making it unlawful to possess a firearm for anyone convicted of a misdemeanor crime of domestic violence); *see also Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (internal quotations omitted).

For support, Burns again relies exclusively on his own affidavit, in which he states that Tandy made intentional misrepresentations to procure "fraudulent" warrants.⁵³ But Burns offers no evidence of intent or anything else about Weiland's or Tandy's state of mind as they were seeking the warrant.⁵⁴

But even if Burns could prove that Weiland and Tandy had been reckless or worse in applying for the warrants, nothing in his argument shows how he could overcome the high hurdle of qualified immunity. Burns fails to show, either through facts or case law, how "any reasonably competent officer" would conclude that a warrant should not have been sought, particularly in light of his family-violence conviction.⁵⁵ As Weiland and Tandy observe, "[t]he same probable cause that supported Burns[']s arrest . . . also supported the search for, and seizure of, firearms Burns illegally possessed."⁵⁶

Burns's unlawful-search claim is dismissed.

### C. Continuance for more discovery

In the event the court finds he "has not adequately responded to [the] defendants' motion for summary judgment," Burns has requested a continuance to

---

⁵³ *See* Dkt 63-1 at 4, 6.

⁵⁴ *See* notes 49 & 50, *supra*.

⁵⁵ *Freeman*, 210 F.3d at 553.

⁵⁶ Dkt. 57 at 29.

allow for more time to conduct discovery.[57] Besides making this request almost two months after the discovery deadline passed,[58] Burns fails to meet the standard under Rule 56(d) for showing why a continuance at this point would be justified. So the court denies this request.

\* \* \*

For these reasons, Sergeant Weiland and Officer Tandy's motion for summary judgment (Dkt. 57) is granted, and Burns's claims are dismissed with prejudice.

Signed on Galveston Island on the 28th day of June, 2021.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

[57] *See* Dkt. 63 at 32–34.

[58] *See* Dkt. 28 (docket control order).